We'll hear argument in the final matter on today's argued calendar, 19-1833, Nicosia v. Amazon.com. Mr. Tussa. Good morning, Your Honor. May it please the Court, I'm Joseph Tussa for Plaintiff Appellate Dean Nicosia. Can you speak, can you try to speak up a little bit more loudly, Mr. Tussa? Yes, I can, Your Honor. Thank you very much. There you go. Is that better? Okay. Yep, that's better. Okay. Your Honor, we reserve three minutes for rebuttal. As Your Honor is well aware, this is the second time we speak up on appeal in front of this Court, this time based on the District Court's opinion that a non-signatory plaintiff, Mr. Nicosia, is bound to arbitrate his claims either by equitable estoppel or probably more apt in this arbitration case, direct benefits estoppel. Your Honor, we believe that decision is errant and somewhat extraordinary for numerous reasons. The first one being is neither equitable estoppel nor direct benefits estoppel is an argument Amazon ever made in the District Court below. In three separate opportunities, a motion to dismiss it made back in 2015, a motion to compel it made post-remand of this Court's first opinion, and in the Rule 72 objection briefing, Amazon never once even implied that either equitable estoppel or direct benefits estoppel applied. And we believe it's because they know it did not. And it did not, Your Honor, because based on this Circuit's, you know, seminal decision in CSA Thompson, you must prove both knowing exploitation of the arbitration agreement in the claims you plead and direct benefit, and in a moment we'll talk about why neither one of those are present. Secondly, thirdly, Your Honor, the District Court relied very heavily in its decision on a case called Bridge v. Credit One Financial, a case it thought was both factually and legally very similar to this case. Factually, it had some distinctions, because unlike the plaintiff in Bridge, plaintiff here never represented to be somebody else. But legally, the District Court relied very heavily on that case, and it cited a 2016 opinion from Bridge where the District Court in Nevada held that equitable estoppel and direct benefits estoppel applied. Unfortunately, the District Court did not take notice that that was not. Excuse me. You have one more minute. Thank you. The District Court here did not take notice that that was not the District Court in Bridge's final word on that opinion. That court, sua sponte, reconsidered and reversed himself. So if one is apt to look very closely at the Bridge case, I think we have to follow its decision that equitable estoppel doesn't apply. Your Honor, direct benefits estoppel. It requires both knowing exploitation and direct benefit to the plaintiff. Your Honor, there is no direct exploitation. None of plaintiff's claims here derive from his wife's underlying agreement with Amazon. We have only state statutory claims and common law claims. We previously had a federal statutory claim that's been dismissed. None of those claims derive directly or even indirectly from Mr. Nicosia's wife's either Therefore, without knowing exploitation, there can be no direct benefit to estoppel. Neither was there a direct benefit to Mr. Nicosia. As the court is aware from its first opinion, he had his own agreements with Amazon, an agreement that did not require arbitration. He did not gain a benefit by Amazon having attributed his purchase of one-day diet. He did not get free shipping. He did not get faster shipping. He did not get a lower price because Amazon had attributed his purchases to his wife's account instead of his own. There was no direct benefit. He had his own contract with Amazon. He did not get a benefit. Your Honor, even if one were to look at even traditional equitable estoppel, it has a couple extra elements as well. It requires the plaintiff to know that he was intentionally misleading here at Amazon, and he did not. He did not share anyone's password. He did not know his wife's password. He was not asked to enter a password. And, of course, equitable estoppel also would require Amazon to prove injury. Your Honor, they haven't even alleged an injury, and, of course, they haven't alleged equitable estoppel at all. But there is no injury. They sold him a product, a dangerous product that contained an illegal drug, which leads me to the last point I want to make about estoppel. The court's familiar with the common refrain, to receive equity, you must come with equity. And here, Your Honor, Amazon sold plaintiff an illegal drug. There's a stipulation in this case that it would be illegal for Amazon to sell a product containing sobutuene, including the product bought by Mr. Nicosia. It violates federal statutes. Amazon, while perhaps the unclean hands doctrine does not equate to equality, it certainly pertains to equity. Amazon could not have argued any of the equitable doctrines that the district court attributed to Amazon, because Amazon sold Mr. Nicosia an illegal and dangerous product that was illegal for it to do so. The equitable doctrines, both equitable estoppel itself and direct benefit to estoppel, could not apply. Judge Bianco, do you have any questions? Yes. Mr. Tussa, I know you argued in your papers that this particular argument was weighed by the lack of a cross-appeal vote. I just disagree with you on that. So I want you to address the merits of this argument. One of the arguments that was made, and the magistrate judge did reference this, is after this lawsuit, after your client filed a declaration in November of 2014 stating that he wasn't aware of the terms and conditions, he then made 27 more purchases on Amazon with those terms and conditions. So independent of all these arguments you're making, why is he not now bound by those terms and conditions and your adversary-cited cases that say that broad arbitration clauses we have here without express limitation to future disputes should be applied to any pre-existing claims on purchases that took place prior to that time, which is what the situation would be here. And there's a number of other cases that have said that and other cases. So why isn't that despotitive of everything? Thank you, Your Honor. Well, my answer to Your Honor's question would raise a number of points. The first one is the procedural point, which apparently we haven't persuaded Your Honor of about the cross-appeal rule. Well, it's not me. The Supreme Court has said, an appellee who does not take a cross-appeal may urge the support of a decree in any manner appearing before the record. That's Jennings v. Stevens, and specifically in arbitration in Cleveland Wrecking Company,  has done appeal without a cross-appeal. And in footnote two of that opinion, we specifically rejected the argument you're making here. So that's why I said that. I really wanted to focus on the merits. I understand, Your Honor. I would just cite one opinion from this Court on this issue of the cross-appeal when they talk about the interplay of the cross-appeal rule and the discretion to look into the record Your Honor referred to, a case called Bergo v. General Dynamics Corp. 122 F. 3rd 140. When the defendant is trying to expand the judgment below by referring to a different legal theory as opposed to different factual theories, we believe we get into an area where the cross-appeal rule trumps the discretion this Court would generally have to look into the record. But let's talk substantively, because that was your question, Your Honor. Yes. Yeah. Your Honor, three different reasons why. The first one being that Amazon provided plaintiff with its legal theory as to why it believed Mr. Nicosia was bound to arbitrate in this pre-motion letter that it's referring to in its papers. We responded to that pre-motion letter, and we told Amazon it's relying on the wrong agreement with Amazon, with the plaintiff has with Amazon, that Mr. Nicosia has an agreement with Amazon that does not require arbitration. Amazon was aware of plaintiff's opinion that he did not have an agreement with them that required arbitration. The argument Amazon did make in that pre-motion letter, which of course was the basis for the prior appeal to this Court, was that as a matter of law, that its checkout order pages for two purchases would have given him notice. Now, Your Honor, that issue went all the way through a district court, up to the Court of Appeal, and this Court vacated the district court, said Amazon was wrong, it had not proven that. So plaintiff was right. I know, but Mr. Nicosia, he now had actual notice as a result of that pre-motion letter. The issue of constructive notice falls away, because at that point he had actual notice. Well, but he had actual notice of the legal theory that Amazon was espousing. Plaintiff's position was, is that they were looking at the wrong contract, that to the extent he had an agreement with Amazon at all, it's an agreement that did not require, that his written agreement, his 2010 agreement with Amazon did not require arbitration. And of course, Your Honor's read the first opinion, where there was talk about whether or not that contract was ever lawfully modified. And in the first opinion, this Court held that in order for that agreement between Mr. Nicosia, not his wife, but Mr. Nicosia and Amazon, to have been modified, Amazon would have had to approve notice of the modification, and on the Washington state contract law, separate consideration. It abandoned an effort to even try to do that in the district court, Your Honor. So to the extent that Amazon was arguing that Mr. Nicosia had an agreement with Amazon that required arbitration, we maintain, as we've maintained since 2014 when the issue first arrived, that if he has an agreement with Amazon, it's one that does not require arbitration, and one that was never lawfully modified, because there's been no notice and there's been no separate consideration. So just to follow up on that, this is Judge Parker. Thanks. Your position is that the 2008 terms continue to govern, and that nothing Amazon has done since then has legally changed the conditions of use. Right. Is that right? So, Judge Parker, just to clarify slightly the facts, his wife's initial agreement with Amazon was 2008, Mr. Nicosia's separate agreement where he established his own account with Amazon, and so the district court opinion- Okay. And so those are still the operative positions. Well, let me not be too glib in this. So the district court relied very heavily on whether or not his wife had agreed to a modification of her agreement based on her subsequent enrollment in, first, the Amazon mom, and then ultimately the Amazon prime. So it's arguable, we think, an incorrect application of Equestable whether his wife's agreement was ever lawfully modified. However, what's never been argued below and never decided as to whether or not Mr. Nicosia's agreement with Amazon ... Of course, he's the party bringing the claim. His 2009 agreement, we don't believe, was ever lawfully modified. This court recognized in its first decision that in order to do so, he would have had to receive notice, and- But Mr. Tusa, I don't understand. He didn't use that account to order the product here. He used his wife's account. How can you say that this agreement he had with Amazon on an account that he didn't use continues to apply forever when he used his wife's account and then entered ... In using his wife's account, forget about his wife's modification or not, he entered at the time of purchase a terms and conditions that included an arbitration clause where he and his agent, you, knew that it had the provision in it. I don't understand why this would be a modification of an agreement regarding an account that he never used in connection with these purchases. Thank you, Judge Bialko. I think there's two points that I'd like to respond to. The first one being your statement that, and I think the district court said this as well, that he used his wife's account to make two one-day diet purchases. It was attributed by Amazon to his wife's account, but it was only because the computer that he used was apparently last used by his wife to log on to Amazon. Mr. Nicosia did nothing to log in as his wife. He had his own account. Amazon produced discovery showing that there had been purchases on his own account. Amazon apparently has a policy in place where it's going to remember the last computer that signed into Amazon and not request the next user to sign in again. Apparently, this is the way they like to speed along its purchase. I think this is important to understand. He did not ask to have these purchases made onto his wife's account. He did not enter her password. He was not ever asked to enter her password. These purchases were attributed by Amazon to his wife's account. These were not prime products. They didn't get prime shipping. They didn't get prime pricing. That's the first thing I wanted to mention. The second thing I think I want to respond to that's inherent in your question, Your Honor, is you said the wife's agent received notice. This is an issue we'd like to respond to as well. I think it's- No, no, no. You misunderstood me. I said he received notice through you, his agent, when they filed. I'm still talking about the period after the lawsuit. I wasn't referring to Dennis. I was referring to you as his agent. I think he knew from the declaration. But at a minimum, you knew. Your Honor, listen, we certainly have been involved in this arbitration dispute with Amazon and we being a counsel, of course, since 2014. But I think it's important to remember what Amazon was arguing. Amazon was initially arguing only indirect notice based on an agreement that they said was modified. And of course, we believe they were wrong in this. And this is a position we took all the way up to this court last time. And indeed, this court last time agreed that Amazon had not proven that as a matter of law. I think it's a dangerous concept, candidly, to hold a party- If one party is going to be held to its opposing party's legal theories for estoppel purposes, for time eternal, all one needs to do then is tell your adversary what you believe is the correct theory of the case. And then right or wrong, you're going to be bound by it. I think that's a dangerous- So Mr. Toussaint, is it right or wrong that your client continued to use the Amazon account after receiving notice of the arbitration clause through this litigation? I think it's fair to say it's right, Your Honor, that since he knew Amazon was making a motion to dismiss based on his use of the checkout order screen, he continued to make a few more purchases up until the time he was preparing for his deposition, and candidly learned the full extent of what Amazon was arguing. And then he did indeed not make any more purchases. It's been a number of years. Okay. So you've reserved three minutes for rebuttal. Judge Park, I'm sorry, did you have any questions before we turn to Mr. Parks? No, I'm good, thank you. Mr. Parks, we'll hear from you, and then we'll hear from Mr. Toussaint in rebuttal. Thank you, and good morning, Your Honors. Can you all hear me all right? Quite clearly, yes. Great. May it please the Court, this is Greg Parks for Amazon.com. When we were here last time, it was on a motion to dismiss in favor of arbitration. On that rigorous motion to dismiss standard, and with a limited factual record, this Court held that reasonable minds could disagree on constructive notice as it relates to the arbitration question. But this Court did articulate the standard for this case and others involving contracts with arbitration clauses formed on the Internet. And that standard is arbitration should be compelled where there is actual or constructive notice of terms containing an arbitration clause. This Court remanded for further proceedings, and that's what the District Court did. First, in a report and recommendation from Magistrate Judge Bloom, and then in a decision, a de novo decision from Senior District Court Judge Glasser, that are both thoughtful and thorough and detailed, and go through at length the constructive and actual notice that the plaintiff had. And I think this Court can and should affirm the judgment below under either an actual or constructive notice standard because the decisions below comply or adhere closely to this Court's rulings in Nicosia 1, Meyer v. Uber, Schnabel, Speck, and Register.com, among others. First, I think Judge Bianco nicely articulated the point that the plaintiff did have actual notice of the terms containing the arbitration clause after Amazon made its motion to dismiss and after invoking the arbitration clause, and maybe more pointedly, after the plaintiff put in an affidavit acknowledging that clause. He himself made 27 purchases on Amazon.com. And it's not at that point, like Mr. Tusa said, that he was just aware of Amazon's theory. What he was actually aware of is that there was a line on the order page that said, by clicking on place your order, you agree to the conditions of use. He was actually aware of that, and he kept clicking on that place your order button 27 times. Whether he was aware of the extent of the arbitration clause or whether he'd actually read the arbitration clause. You have one more minute. Doesn't matter. And I think that could resolve this case and the court could affirm on that grounds won't. Second, turning to constructive notice, on remand, it showed that the account the plaintiff used to place this purchase, and that by the way, he knew he was using that account. He said that sometimes he would go on that computer and he would see his wife's email address up in the corner, and he knew that he was getting the prime shipping benefits. He enjoyed the two-day free shipping, and he knew he was using that account. And that account had signed up for Amazon Prime and agreed to the prime terms and conditions through the Amazon Mom signup program, which is in our brief at pages 13 and 14. And on that signup flow in two places, it tells the consumer by clicking on the continue button, you agree to the Amazon Mime terms and conditions first, and then on the second page, it says by signing up, you acknowledge you have read and agree to the Amazon Prime terms and conditions, and the consumer then clicks on sign up for Amazon Mom. That meets the standard for constructive notice set in Nicosia One and Meijer versus Uber for three reasons. First, the links there are immediately below the button. They're not over to the side like they were in Nicosia One. They're immediately below that button. They're spatially adjacent. Second, it uses the phrase sign up, which is a phrase that signals to a consumer the fact that they're agreeing to some thing, some program. And third, it occurs at a time when the plaintiff or the consumer is initiating a program, which is something that the Meijer court found to be significant. At that point, the consumer should expect there are other terms and conditions. So this signup page squarely meets the standard in Meijer versus Uber. Now, on the question of whether the plaintiff should be bound by that, I think the fact that he was using that same prime account, was receiving direct benefits from that prime account, knew he was getting direct benefits from that prime account, settles the issue. We in our papers below called that a derivative rights theory because we were saying it's derivative from his wife's rights to place an order. And so he's subject to those same conditions. District Court Judge Glasser, who is more learned than me and been doing this longer than a lot of us, decided that that would be better to be analyzed under an equitable estoppel theory. But it's the same basic idea, and it is this basic idea that in a context where online ordering is becoming increasingly a common, and as we're doing this oral argument from our homes in the midst of a pandemic where online and socially distant ordering is going to become even more common, it's really important that the analysis not turn on who's clicking the button. Because if it does, then consumers and savvy internet purchasers everywhere could avoid contractual obligations simply by having someone else click the button. And that can't possibly be right. Judge Park, could I ask you a question about that? You say it's basically the same idea. Do you have a view as to which we should start with as between equitable estoppel and derivative rights and why? Your Honor, I think the particular facts Judge Glasser has convinced me, and under the in that he was receiving benefits under the prime contract that his wife's account had agreed to by signing up for MOM, which was really the initiation of that prime relationship and having agreed to the prime terms and conditions at that point. And he was receiving benefits. He also, because by virtue of the fact that he was on the screen and saw that it was his wife's email account that was listed there and he was clicking the place your order button, he knows that he's representing to Amazon that he's in that account, that he is his wife. And whether he's misrepresenting to her that he's really her or not, I think matters less than the fact that he knows he's using that account. He knows that account is signed up for prime. He's got to know, in fact, in a lot of these instances, he has actual knowledge that that prime account is subject to terms and conditions containing an arbitration clause. So I think that works a little bit better on the facts here because we have that full record. But even if you didn't have the full record, I think the derivative rights theory might be the one that in a lot of cases is going to be more applicable because we might not always have the pure facts here. It would be important maybe for the court to get to that point as well. Mr. Parks, the problem with equitable estoppel is that it contains a lot of other elements that would not be part of a derivative rights analysis to the extent that this issue comes up a lot. You wouldn't want to have in every case all these other aspects of equitable estoppel, which is an equitable doctrine, like Mr. Toose is pointing out, that unclean hands, for example, would come in under equitable estoppel, but certainly under a derivative rights analysis would be irrelevant, right? That's correct, Your Honor. I strongly agree with that. So that's why I'm saying under these facts, derivative rights fits. But I'm sorry. Under these facts, equitable estoppel fits. No, but under these facts, you'd have to address under equitable estoppel why there's not unclean hands if, in fact, Amazon knew that this was illegally stipulated that this product was illegal. So why wouldn't that come into play under equitable estoppel? Two reasons, Your Honor. One is that doesn't go to the contract that Mr. Nicosia was using to the prime contract. The sales of the one-day diet were separate. Second, Your Honor, there's no allegation here that Amazon knew at the time that that one-day diet product did contain subutramine. We've admitted it now, but at the time of the sale, we didn't know that. And so I think on those facts, it was not an abuse of discretion by Judge Glasser to not say, well, Amazon comes here with unclean hands. And so I think, given those facts, this court could likewise affirm that point. But I think it does raise a good point that, in some ways, the derivative rights theory is perhaps better and cleaner for most cases where we might not have the same factual record all in front of us. Can I just ask you to address the modification issue? You heard Mr. Tusa today as it relates to, I think, his argument, even the 27 purchases after the litigation started, that he had an agreement with Amazon and none of these subsequent acts can constitute a modification of that agreement. Yes, Your Honor. It is not our position that there was a modification of the agreement. It's our position that each time, each one of these interactions with Amazon was a new contract. So signing up for Amazon Mom and incorporating the prime terms and conditions, that was a new contract that agreed to arbitration. Each one of the 27 times that the plaintiffs knew there was an arbitration clause and clicked on it, that was a new contract. So we're not saying there was a modification. And I think that the Eakin case out of the District of Washington that we cite in our does a very nice job of addressing the fact that, no, there are separate new contracts. This is not a modification of an existing contract from 2008. Well, I know these aren't the facts here, but suppose someone signed up to Amazon, didn't have an arbitration clause in it, and then used that account, but the subsequent each purchase after that, there was an arbitration provision added. Is your position that even in that situation, that's not considered a modification? No, Your Honor. It would be Amazon's position that there's a new contract each time, and you would evaluate under that new contract whether there was an arbitration term imposed under a constructive or an actual notice standard. You're right. That's not the condition here. The facts here, the facts are he used an Amazon Prime account that had signed up for Amazon Mom and signed up for Amazon Prime and had those additional things. Had he used his own separate account to purchase the One Day Diet or had he used his own separate account in other instances, we'd be looking at a different question. We'd be looking at, in all of those instances, should he have had constructive notice? Should he have seen those links being a return visitor to this virtual Apple stand to draw on Judge LaValle's analogy and register.com? If he returns those multiple times, should he have seen that? The magistrate judge found that that's the case, that this was a visitor who visited so frequently, he should have seen that sign. But I think to Judge Bianco's point, the actual analogy in register.com was Judge LaValle saying, just say someone eats an apple on the way out of the stand and then sees the sign that says apples are 50 cents. They can't come back to the same stand over and over again, keep taking apples and not paying for the apples. That's exactly what Mr. Nicosia did here. He knew that buying from Amazon involved an arbitration clause, and he kept coming back to that virtual Apple stand and making purchases on an actual notice kind of standard. Can I ask you about the modification versus new contract issue that you were describing? If there's a new contract every time a purchase is made, does that then apply retroactively to encompass past purchases? So in other words, the purchase may have been 2008 under the terms then. Every time, if I made a purchase in 2020, that whatever claim that I might have had from a purchase back then, the ground has shifted. Is that the case? Yes, Your Honor, because that goes to the second question in the arbitration inquiry. First question, was there a valid contract formed that contains an arbitration clause? Your Honor's hypothetical, yes. In 2020, you sign up, you do these things, and there's an arbitration clause. You then look to the scope of that arbitration clause, and the scope of the arbitration clause here is very broad. It applies to any dispute regarding any purchase at Amazon.com, and this is such a dispute. The Supreme Court has instructed in the Moses Cone case that the court, once it gets to that second question of the scope of arbitration, should resolve any doubt in favor of finding arbitrability, and that's why the courts have said, yes, the temporal limitation, as long as the arbitration clause doesn't say it only applies to future or it only applies to past, it applies to both past and future, and any live dispute that still existed in 2020 as to a purchase in 2008 could then be arbitrable under a contract that that's broad, and that's what Congress intended in the Federal Arbitration Act and what the Supreme Court has directed courts throughout the land to interpret very broadly. Thank you very much. Judge Bianco, do you have any other questions? No. Thank you, Judge Lawyer. Judge Park? No. I'm good. Thank you. Okay. Mr. Tussa, we'll hear from you about rebuttals. Thank you very much, Your Honor. Your Honor, a number of points in rebuttal. Firstly, I certainly do agree with the questions from the panel that equitable estoppel is a very different doctrine from derivative rights. It's certainly not the same, and it's also one that plaintiff never had due process to rebut in the district court below. This is our first opportunity to rebut it. And, of course, as you know, the Mortis decision where this derivative rights concept derived, it was based on a sub-licensee theory. It's a very different—that's a very different contract-based argument than equity. And so it certainly is quite different, Your Honor. I want to spend a moment talking about, though, Mr. Parks's repeated statements that Ms. Nicosia's wife most certainly would have had notice here through an agent and then based on their mom's sign-up flow. I think this is a point that's got a lot of attention in the district court's decision below, and I think both were errant. The first thing procedurally we have to mention is this was an area roundly rejected by the report and recommendation from the magistrate judge and was not the subject of any Rule 72 objection. It should have been waived by the time this case reached the district court. And without notice from Mrs. Nicosia, as Judge Glasser said himself, there would be no basis to even get into equitable estoppel from Mr. Nicosia, the plaintiff. The second thing, Your Honor, is Mr. Parks talked about the mom's sign-up flow. I think it's important to look what the record shows here. There are five pages of website screens talking about the mom's sign-up flow beginning in the appendix of page 897. Not once is arbitration raised. There is eventually a button you click that says it will take you to the mom terms and conditions. Assuming that you notice that hyperlink, it would take you to the mom terms and conditions, which does not ever mention arbitration. It does provide a hyperlink to the prime terms and conditions. If one were to see that hyperlink, you'd go to the prime terms and conditions. It does not once mention arbitration. You would have to then hit a third link to get to the conditions of use before you finally find their arbitration terms on page 7 of that agreement. You have one more minute. Mr. Toussaint, didn't we, and I remember being on the panel, Nicosia 1, didn't we resolve this issue more or less? Your Honor, we think you did. Now, it comes up in a slightly different context. In Nicosia 1, we were dealing with whether or not there was constructive notice in Amazon's checkout screens, right? It's order screens. And the court held there that Amazon had not satisfied its burden to prove that it was. On remand, Amazon sort of changed its idea of how notice may have come up. Now, it said, OK, forget the order screens. We're now going to get around that argument by arguing the wife's sign-up flow years before the purchase is an issue for Amazon mom are the things that one must look at. So they're trying to get away from the checkout order screens. Really, what we think this case should have been about upon remand, but upon remand, Amazon changed horses, so to speak. We argue that was waiver in our papers. And now they're arguing this sign-up flow, what has sometimes been called by some of the district courts sign-up wrap, as opposed to no-click wrap or browse wrap. And, Your Honor, it could not have been more difficult for Ms. Nicosia's agent to find these arbitration terms. They would have to navigate five website pages that don't mention arbitration, two adhesion contracts, the mom and the prime contracts, which don't mention arbitration, follow three different hyperlinks from the mom terms and conditions to the prime terms and conditions to finally the conditions they use to find one before one would even see any terms about arbitration. This has to be the most difficult flow to find an arbitration terms. And certainly, building from Nicosia 1, if that's the conspicuous notice, then this is much, much tougher to do than it ever was there. Mr. Tuso, let me just ask you, you didn't really address today, at least, Mr. Park's argument that if we agree with your approach here on derivative rights and that your client can't be bound by your life sacks or the agent of your life sacks, his argument is that someone could just have a spouse sign up to all the different accounts on the internet and just decide they're not going to pay any attention to terms and conditions and make all sorts of purchases and they'd be completely immune from the terms and conditions of all these different entities that they're doing business with. What's your response to that? Thank you, Your Honor. I think it's easy for Mr. Parks to argue the hypothetical when the actual facts of this case prove it's not a problem. In the first Nicosia 1 opinion, the panel noted in its opinion that Amazon doesn't employ click wrap where it obviously could to get their customers' consent. It does so, the opinion said, in an effort to speed you through the purchase process. Here, Your Honor, I think it's ... Again, the district court makes some nefarious attribution to Mr. Nicosia as password sharing. Your Honor is asking me, won't we be creating a larger problem by allowing spouses to share here? What you have to understand is Mr. Nicosia did have his own agreement. He wasn't trying to get around not having a contract with Amazon to make purchases. When he logged on, he wasn't asked to put in any account credentials. Why? Not because he tried to be his wife. Not because he misrepresented anything to anyone. It's because Amazon doesn't require you to sign on if it recognizes your computer. This is a problem Amazon could fix if it wants to, Your Honor. It could require you to sign in every time you log on to Amazon.com. It doesn't want to slow you down before purchasing whatever you're purchasing on Amazon. Mr. Parks said what he must have known. Her email address was in the upper right-hand corner. Your Honor, that's a factual argument that perhaps has to go to trial below, but that's not what's in the record here. The record here is that Mr. Nicosia did not ever intend to misrepresent that he was his wife. He didn't try to sign into Amazon as his wife. He had his own account. He didn't get any prime benefits because the products that issued, the one-day diet products, were not subject to any prime benefits. And so I understand Amazon's point in the abstract, and I think any internet commerce provider would have that position. But I think we have to understand that this is largely a problem of its own making because it doesn't require you to sign in. And Mr. Nicosia did nothing to misrepresent he was somebody he wasn't. The truth of the matter is he very forthrightly signed up for his own account. He had his own account. And Amazon attributed this to his wife's account, but by no fault of his own. He did nothing inequitable or unlawful, which would lead Amazon to have attributed these purchases to his wife. And this is why we think it was a bit of an end run for the district court to allow Amazon to not argue modification of his agreements with Amazon. I heard Mr. Parks say, well, those 27 purchases, every time he signed on, it implicated the conditions of use. To the extent they implicated the conditions of use, our position has been from the time the case has started that the conditions of use that applicable are Mr. Nicosia's own conditions of use because he had his own agreement. And unless and until the court below, or perhaps this court makes a finding on modification, then there is no finding that his original contract with Amazon ever required him to arbitrate, regardless of whether or not he was on actual notice or not. It was certainly our position not. Thank you very much, Mr. Tusa. Judge Bianco, Judge Parks, do you have any other additional questions? No, thank you. No, thank you. Thank you. We will reserve the decision. That concludes today's oral argument calendar and court is adjourned. Thank you all.